# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

### NO. 11-40386

---

## RENE GREEN, INDIVIDUALLY  AND AS HEIR OF JONATHAN EDWARD BRODY GREEN

*Plaintiff - Appellee*,

**vs.**

## BLITZ U.S.A., INC.,

*Defendant - Appellant.*

---

### BRIEF OF THE PLAINTIFF - APPELLEE

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS, MARSHALL DIVISION
(USDC No. 2:07CV372)

---

Respectfully Submitted by:

**DARREN GRANT** *Lead Attorney*
State Bar No. 24012723
**MATTHEW B. FLANERY**
State Bar No. 24012632
**GRANT & FLANERY, P.C.**
216 W. Erwin, Suite 200
Tyler, Texas 75702
(903) 596-8080  (Telephone)
(903) 596-8086  (Facsimile)
Darren@GFTexas.com
*Attorneys for Plaintiff-Appellee Rene Green*

# TABLE OF CONTENTS

**I.  CERTIFICATE OF INTERESTED PERSONS**. . . . . . . . . . . . . . . . . . . . . . ii

**II.  STATEMENT REGARDING ORAL ARGUMENT**. . . . . . . . . . . . . . . iii

**III.  TABLE OF AUTHORITIES**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

**IV.  RESTATEMENT OF THE ISSUES**. . . . . . . . . . . . . . . . . . . . . . . . . . 2

**V.  RESTATEMENT OF THE CASE**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**VI.  RESTATEMENT OF THE FACTS**. . . . . . . . . . . . . . . . . . . . . . . . . . 5
    Judge Everingham's Report and Recommendations. . . . . . . . . . . . . 6
    Judge Ward's Findings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**VII.  SUMMARY OF ARGUMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**VIII.  ARGUMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    Blitz Willfully Violated the Court's Discovery Order. . . . . . . . . . . 17
    The Court Did Not Abuse its Discretion. . . . . . . . . . . . . . . . . . . . 19
    Blitz's Appeal of the $250,000 Compensatory Sanction Is Moot. . . . . . . 24

**IX.  CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

**X.  CERTIFICATE OF COMPLIANCE**. . . . . . . . . . . . . . . . . . . . . . . . . a

**XI.  CERTIFICATE OF SERVICE**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . b

# I.

## CERTIFICATE OF INTERESTED PERSONS

On Appeal from the United States District Court for the Eastern District of Texas, Marshall Division, *Green v. Blitz, U.S.A., Inc.*, No. 2:07-CV-372, Fifth Circuit Case No. 11-40386:

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal:

- Plaintiff-Appellee Rene Green  is the surviving natural mother of Jonathan Edward Brody Green ("Decedent"), who died on March 17, 2007.  At all relevant times, both Green and the decedent were citizens and residents of the State of Texas, County of Bowie, City of Hooks. There are no known creditors of Decedent's estate.

- The opposing law firms and/or counsel in the case are Adrienne L. Hernandez, Shook, Hardy, & Bacon L.L.P., 2555 Grand Blvd., Kansas City Missouri 64108, David E. Jones, Logan & Lowry, LLP, 102 E. 3rd Street, P.O. Box 452469, Grove, OK 74345-2469, and Michael Bridwell, Strong, Pipkin, Bissell, &Ledyard, L.L.P., 595 Orleans, Ste. 1400, Beaumont, Texas 77701.

/s/   Darren D. Grant
*Attorney of Record for Rene Green*

ii

## II.

### STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellee Rene Green hereby advises that she does not believe that oral argument would be helpful to the Court because this appeal involves no new or novel issues of law or fact, the factual record is limited, and the outcome will have no far reaching effects on future litigants. Specifically, Appellant is asking this Court to hold that, in effect, its discovery efforts were not unreasonable under the particular facts and circumstances of this case. The issues do not involve whether a formal litigation hold is required, or whether routine email server maintenance is per se evidence of document destruction, as Blitz avers. Rather, the simple issue is whether under these specific facts and circumstances, Blitz's efforts were unreasonable. Oral argument will likely not aid the Court in its understanding of the facts or law.

# III.

# TABLE OF AUTHORITIES

CASES

*Bradley v. American Household, Inc.*,
    378 F.3d 373 (4th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Calder v. Blitz U.S.A.*,
    No. 2:07cv00378 (D. Utah).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Clark v. International Union*,
    752 F. Supp. 1291 (WD Virginia 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Diaz v. Southern Drilling Corp.*,
    427 F.2d 1118 (5th Cir. 1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*ESN, LLC v. CiscoSystems, Inc.*,
    685 F. Supp. 2d 631 (E.D. Tex. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Federal Deposit Ins. Corp. v. LeGrand*,
    43 F.3d 163 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Fleming & Assocs v. Newby & Tittle*,
    529 F.3d 631 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17 - 20

*Gompers v. Bucks Stove & Range Co.*,
    221 U.S. 418, 55 L. Ed. 797, 31 S. Ct. 492 (1911).. . . . . . . . . . . . . . . . . 23

*In re Hunt*,
    754 F.2d 1290 (5th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Ingalls v. Thompson (In re Bradley)*,
    588 F.3d 254 (5th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Inst. for Motivational Living, Inc. V. Doulos Inst. For Strategic Consulting, Inc.*,

    110 Fed. Appx. 283 (3rd Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Lamar Fin. Corp. v. Adams*,
    918 F2d 564 (5th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Securities and Exchange Commission v. First Financial Group of Texas, Inc.*,
    659 F.2d 660 (5th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Smith v. Sullivan*,
    611 F.2d 1050 (5th Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Thornton v. Blitz U.S.A.*,
    No. 5:09cv003 (S.D. Ga.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Travelhost, Inc., v. Blandford*,
    68 F.3d 958 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 20

*U.S. v. $ 49,000 Currency*,
    330 F. 3d 371 (5th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## RULES

    FED. R. CIV. P. 52(a)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## IV.

## RESTATEMENT OF THE ISSUES

1. Given the facts adduced during two separate hearings, and after the parties thoroughly briefed the facts and law, the District Court did not abuse its discretion when it found that Blitz willfully violated its discovery obligations by destroying information and failing to search for or produce hundreds-of-thousands of relevant documents and electronic mailings prior to trial.

2. The District Court had jurisdiction to enter civil sanctions to enforce its own rules, even after it lost jurisdiction over the substance of the case.

3. Blitz was properly ordered to inform past and future litigants of its contemptuous behavior to remediate the harm caused by its failure to search for and destruction of relevant documents.

4. The District Court acted within its discretion to enter civil compensatory sanctions though the parties settled.

5. Blitz purged itself of the compensatory portion of the District Court's sanction order when it paid $250,000 into Plaintiff's counsel's trust account.

## V.

## RESTATEMENT OF THE CASE

On February 1, 2007, Jonathan "Brody" Green was fatally burned in front of several friends after a consumer gasoline container manufactured by Blitz, U.S.A., Inc. ("Blitz") exploded in his hands.   Plaintiff established that flame arrestors are a cheap, well known, effective technology used in many industries to prevent flashback (i.e. flame traveling back along a vapor trail).  At trial, Blitz contended that it did not utilize flame arrestors because the same were not necessary, and would actually increase the risk of consumer injury.

Tantamount to the case was whether the gasoline container exploded, as the witnesses testified, after flames traveled up the vapor stream into the can.  Blitz maintained that there is no credible research proving that could ever happen, and therefore a flame arrestor would not have prevented Brody's death.  It is particularly relevant that Blitz used the lack of research, standards, and the company's claimed ignorance of flame arrestor technology as a sword to attack Plaintiff's theories and scientific evidence. It is also worth noting that Blitz has been involved in numerous lawsuits facing the same allegations since 2002, all the while hiding information proving that Blitz was aware of the problem and had investigated and recognized the need for flame arrestor  technology, even though it denied the same at trial.

While the jury was deliberating, the parties reached a "high-low" agreement, based in large part on their views of how the case had been presented. If the jury had been presented with documentation that Blitz (1) knew that their cans explode in real life scenarios; and (2) had previously investigated and discussed various flame arrestor designs to prevent such explosions, the case would obviously have had a different outcome, especially regarding the high-low agreement.

When it came to light in subsequent, similar cases that internal corporate documents concerning explosions and flame arrestors had been withheld and destroyed, Plaintiff immediately brought it to the District Court's attention. The parties were given ample opportunity to present and brief their positions. Blitz called its corporate representative, Larry Chrisco, to testify at the hearing to show cause. The facts clearly and convincingly proved that Blitz violated the Court's discovery order. Despite Blitz's pleas regarding "jurisdiction" and "sanctity of settlement agreements", this case presents no complex or novel issues of fact or law. Blitz failed to take its responsibilities seriously, and must now bear the reasonable consequences.

# VI.

# RESTATEMENT OF THE FACTS

## WHO IS BLITZ?

Although Blitz represents itself as a small town company in order to justify its admitted failures, the reality is that Blitz is owned by a New York City-based, private equity firm called Kinderhook Industries, LLC.  Trial Tr. at 100: 12-22.[1]  Blitz manufactures its products in an enormous 450,000 square foot facility. Trial Tr. at 103: 11-19.  In 2007, the year before trial, Blitz sold approximately $70,000,000 to $80,000,000 worth of product, and had the capacity to produce 60,000 to 70,000 consumer gasoline cans per day.   Trial Tr. at 102: 15-24.

At the time of trial, Blitz controlled between 65% and 70% of the entire United States market for consumer gasoline cans.  Trial Tr. at 105: 13-17.  Astonishingly, since Blitz began producing plastic gasoline cans in 1987, it has sold an estimated 200,000,000 of them in the United States alone.  Trial Tr. at 104: 24-25, 105: 1-6.

Blitz is hardly a "mom and pop" operation.

At trial, Blitz outlined its position clearly during opening arguments: "Despite all of that, there has never been, one time, a suggestion from any of the outside design engineers, from ASTM, from UIL, from any of the members of the ASTM

---

[1]All references to the unpaginated trial transcript herein are to Docket #185.

5

subcommittee, which includes members from the Consumer Products Safety Commission and a whole host of folks, that there be a flame arrestor on a portable plastic gasoline can for consumers." Trial Tr. at 51: 7-13. In fact, Blitz went further by taking the position that flame arrestors "don't serve a function … [t]hey don't do any affirmative good, and there's some hazards." Trial Tr. at 51: 17-25.

### JUDGE EVERINGHAM'S REPORT AND RECOMMENDATIONS

Plaintiff filed her Motion for Sanctions February 25, 2010. USCA5 2284. Blitz filed its response to Plaintiff's Motion on March 12, 2010. USCA5 2379. Judge Everingham held the hearing on the Motion on March 26, 2010, USCA5 2488, and issued his Report and Recommendations on January 12, 2011. USCA5 2780. Between the date of the hearing and the date findings were issued, Plaintiff supplemented her motion 6 times, and Blitz responded to each. Needless to say, the parties were given full opportunities to submit evidence, brief the issues, and be heard.

After all of the above was fully considered, Judge Everingham began by discussing the fact that Blitz failed to produce Rocky Flick's "wish list", even though they produced it in subsequent cases. USCA5 2788. There was no dispute that the document was relevant, and Judge Everingham agreed that it was crucial to Plaintiff's case as it clearly would have undermined Blitz's position "that a flame arrestor was

6

not a worthwhile design change to a consumer gas can." *Id.*

Similar to the "wish list" was the Charlie Forbis drawing. In approximately September, 2004, Charlie Forbis was a designer who worked for Larry Chrisco, the head of Research and Development. There is no dispute that he made at least one drawing of a preliminary design for a flame arrestor which was not produced. USCA5 2782. Further, the lower Courts received evidence that Forbis could not recall anyone asking him for any electronic mail or documents regarding flame arrestors. USCA5 2783. David Price, another Blitz designer, has testified that he and Forbis worked together on the design of a flame arrestor. Blitz discarded his research in mid-late 2005. *Id.* Like Mr. Forbis, no one told Mr. Price not to destroy electronically stored information, and no one ever came to him and asked him whether he had information relevant to flame arrestor litigation. *Id.*

Additionally, Judge Everingham discussed the fact that Blitz offered evidence that it hired an outside firm, as opposed to a self-described "computer illiterate" (as discussed below), to search its servers for relevant information in 2009, a year after the *Green* trial. The Court correctly found this a tacit admission that Blitz was not taking its responsibility to locate electronically stored data seriously at all. USCA5 2789.

7

*JUDGE WARD'S FINDINGS*

Blitz has adequately summarized the district Court's Order, but fails to succinctly point out that Blitz does not really dispute Court's recitation of Blitz's failures, because there is no dispute. Rather, Blitz takes issue with the scope of the sanction order, and, failing that, with Judge Ward's *conclusion* that Blitz's discovery abuses were unreasonable and willful. Stated more simply, Blitz does not dispute that it failed to produce approximately 200,000 relevant documents, failed to issue a litigation hold to prevent the destruction of documents, neglected to add the Dunbar and other "privileged" documents to its Privilege Logs, and put a self-professed computer illiterate (Larry Chrisco) in charge of searching email and electronic data instead of its Information Technology Department. Rather, Blitz argues that Judge Ward erroneously concluded that such failures were willful violations of the discovery order.

In addition to the volumes of documentary evidence the District Court reviewed prior to and after the Hearing to Show Cause, Judge Ward also observed Larry Chrisco's testimony. Blitz rests its entire position regarding the unreasonableness of its discovery efforts on Mr. Chrisco's shoulders. There is no dispute that Larry Chrisco was either in charge of or was involved in each and every project, inquiry, or investigation regarding explosivity and flame arrestors for Blitz

from 1973 through September of 2007.[2]  S.C. Hr'g Tr. at 22: 4 - 17.  Therefore, Blitz

concluded that Chrisco was the employee to be responsible for gathering documents

for production from 2003 through 2007.  *Id.* at 22: 18 - 24.

There were some glaringly obvious problems with this grant of authority.  First,

even though Blitz was required to produce electronically stored evidence, including

emails, Larry Chrisco volunteered "I checked all sources, e-mails, elect – I just want

to make one point here.  I am about as computer literate – illiterate as they get."  S.C.

Hr'g Tr. at 37: 8-11.   Blitz takes the Court's somewhat sarcastic dicta that Blitz

"perhaps could have" [had a competent employee conduct the search], to make an

argument that there was no finding of culpable mental state.  In fact, Judge Ward

specifically found "Blitz violated [the above] provisions of the Discovery Order and

made a false certification in its pretrial order by not disclosing the documents

discussed above."  USCA5 3037.  Even more specifically, the Court wrote:

> **Additionally, the Court finds that the violation of the Discovery
> Order was willful given the context and the type of documents not
> disclosed.  Exhibit 4, the August 8, 2005 email, shows the gravity of
> Blitz's discovery violations for failing to produce relevant
> documents.  The email had the words 'Flame Arrester' in the
> subject line of the email. … Larry Chrisco, the person in charge of
> collecting documents for discovery, was a party to the email.**

*Id.*

---

[2]All references herein to the unpaginated show cause hearing transcript are to Docket
#250.

9

Blitz's argument to this Court that the District Judge only focused on three documents is typical of its propensity to ignore plain facts. It is clear that Judge Ward considered all the evidence, but found that many documents were so similar, that he focused "on three items that fairly represent the types of documents not disclosed by Blitz in this case." USCA5 3034. The Court reiterated the point following its discussion of the various documents presented at the hearing, "Other documents which were not disclosed were presented to the Court at the Show Cause Hearing, and these documents are similar to the three described above, as they are emails, reports, or other documents outlining meetings held by Blitz employees related to flame arresters." USCA5 3036.

In sum, after considering several hundred pages of collective briefing and documentary evidence, the transcript of the Magistrate's hearing, and a full evidentiary hearing in District Court, Judge Ward thoughtfully crafted the subject order which is carefully tailored to address Blitz's willful actions and inactions.

# VII.

## SUMMARY OF ARGUMENT

As movant, Appellee met her burden to clearly and convincingly prove that Blitz willfully violated the Court's Discovery Order.  Blitz argues that some of the relevant items were produced only after Blitz had taken "extraordinary" measures in subsequent cases.  It brandishes the specter of unwieldy costs, time, and effort the Order would require.  The problem is, however, virtually none of the documents and kinds of documents addressed by Judge Ward's order have anything to do with the electronic data server "scrub".  The singular issue presented in that regard is whether Blitz's efforts were reasonable.  They were not.

In 2008, Blitz produced basically the same set of documents it had been producing for years.  In 2002, Blitz put its then head of R&D, Larry Chrisco, in charge of searching out documents.  As the head of R&D, and someone who has admitted to being involved in every project or action involving flame arrestors and explosivity, Larry Chrisco failed to produce relevant documents even from his own files, and from his own email – he did not even search his own machine by typing "flame arrestor" in a search, which would have been effective and taken less than a few minutes of time.

11

Despite admitting these facts, Larry Chrisco testified that he thinks he did a good job. Bluntly, Mr. Chrisco is not a credible witness, and the District Court was free to disbelieve his contradictory, inconsistent testimony in favor of the objective fact that Blitz willfully failed to conduct any semblance of a reasonable discovery effort. The record is replete with examples of Blitz's outright belligerent conduct, and its excuses are transparent. It is not credible that Mr. Chrisco produced CARB files, just not the file which allegedly contained the "Wish List". It is not credible that Mr. Chrisco, Blitz's corporate representative, had "forgotten" in less than 2 years before the *Green* matter was filed that the CEO had given him instructions regarding flame arrestors which spawned a special project involving himself and 2 other employees. It is not credible that he simply failed to remember the telephone calls, meetings, emails and even checks which he had written to outside consultants specifically dealing with flame arrestors.

The facts are undisputed that thousands of relevant documents were not produced; that Charlie Forbis' drawing(s) and research regarding flame arrestors was destroyed; that a multi-million dollar corporation placed a self-professed "computer illiterate" in charge of collecting electronically stored data; that Blitz failed to issue any kind of litigation hold or instruction regarding what kinds of documents should not be destroyed by employees (while affirmatively instructing employees to

12

permanently delete email); and even that alleged privileged documents were turned over to counsel, but were not included in privilege logs (i.e. the Dunbar documents). Even though Blitz tries to justify and explain away each failure in turn, the clear and convincing evidence affirmatively proves that Blitz's failures were not just negligent, but were willful.

This is why Blitz begins its arguments by complaining that the District Court is without authority to order Blitz to provide copies of the Order to past litigants (only going back for 2 years), and to future litigants and Courts (for the next 5 years). In fact, this Circuit has upheld time and time again the District Courts' power to enforce orders and preserve their authority. This Order reflects a carefully considered sanction based on the totality of the circumstances of the parties and the evidence. Other litigants and judges should be advised of Blitz's deception both to remediate harm in the past, and to prevent or at least strongly discourage the same harm and conduct in the future. For example, if Blitz faces litigation in New Jersey next year, that plaintiff might never know that Blitz has destroyed previous designs for flame arrestors, that a dearth of email regarding special flame arrestor projects does not mean that Blitz has not recognized or considered the need therefore. Without the order in place, those litigants will face the same obstacles Rene Green faced.

Similarly, the Court's compensatory $250,000.00 sanction award to Appellee should stand, as that issue was not contemplated by the settlement agreement, and conservatively accounts for the specific harm done.  Judge Ward presided over the *Green* trial, and was aware of the parties' agreement and the basis thereof.  There was no existing sanction order or motion therefore pending at the time of trial.  Thus Blitz's authorities are clearly distinguishable, and its arguments that the order somehow affects the parties' contract is without merit.  Blitz's argument that the order places a continuing obligation to supplement discovery after a case is settled overlooks the facts that (1) this order only addresses the unreasonableness of Blitz's discovery efforts and (2) remediating the harm that naturally flows therefrom.  In essence, Blitz believes that it can settle away its fraud—a judicial position that this Court should refuse to adopt.

Finally, Blitz's appeal of that portion of the sanction awarding Appellee $250,000 is moot, because Blitz has purged itself of that portion of the order by paying that sum to Ms. Green's counsel to be held until the appeal is final.

As it has done in countless cases, Blitz uses its deception as a weapon, attacking the men, women, and children who have been needlessly burned by its exploding consumer product with the claimed dearth of support for flame arrestors. It would be almost impossible to create a bright line rule defining what is and what

14

is not a reasonable discovery effort. Expectations of reasonableness are always fact specific and viewed in light of the facts and circumstances of each case. That is why a trial court's factual findings are subject to the demanding "clearly erroneous" standard, and its carefully crafted sanctions disturbed only when there is an abuse of discretion. Despite Blitz's parade of horribles, the District Court's order only serves to reiterate the already well-established tenant that litigants must take their discovery responsibilities seriously, or suffer the consequences.

## VIII.

## ARGUMENT

There are three requirements of the Court's Order at issue:

A)    $250,000.00 payable to Rene Green (Sanction "A");

B)    $500,000.00 monetary sanction which is tolled for thirty-days and discharged when Blitz certifies that it has notified every Plaintiff in every lawsuit it has had proceeding against it, or is currently proceeding against it, for the past two years of the Order (Sanction "B"); and

C)    Blitz must file a copy of the Order with its first pleading or filing in every new lawsuit it participates for the next five years (Sanction "C").

Blitz broadly takes issue with the District Court's authority to order any of the above, which Appellee discusses below.

15

*STANDARD OF REVIEW*

The first step in this Court's analysis is to determine whether the contempt order is "civil" or "criminal". *Ingalls v. Thompson (In re Bradley)*, 588 F.3d 254, 263-65 (5th Cir. 2009), *citing Smith v. Sullivan*, 611 F.2d 1050, 1052 (5th Cir. 1980). This characterization is made depending on the sanction's primary purpose. *Id., citing Lamar Fin. Corp. v. Adams*, 918 F2d 564, 566 (5th Cir. 1990). "If the purpose is to punish the contemnor and vindicate the authority of the court, the order is viewed as criminal. If the purpose of the sanction is to coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation, the order is considered purely civil." *Id. at FN7.*

The sanctions ordered by the District Court here are civil compensatory or remedial in nature. Blitz has never argued that any facet of the sanction order was criminal. "Civil contempt can serve two purposes. It can be used to enforce compliance with a court's order through coercion, or it can be used to compensate a party who has suffered unnecessary injuries or costs because of contemptuous conduct." *Travelhost, Inc., v. Blandford*, 68 F.3d 958, 961-62 (5th Cir. 1995). Sanctions A and B are both backward-looking, and although Sanction C appears at first glance to be "coercive", in actuality all three are clearly designed to remedy the consequences of Blitz's defiant conduct on opposing parties, rather than punishing

16

the defiance per se.  *See Ingalls*, 588 F.3d at 264.  Again the focus is on the **purpose** of the sanction, not the nuts and bolts of when or how it is to be purged.

### BLITZ WILLFULLY VIOLATED THE COURT'S DISCOVERY ORDER

Although Blitz first questions the District Court's authority for issuing sanctions, Appellee will first address the threshold issue of whether the District Court erred in finding that sanctions were warranted.  "A party commits contempt when it violates a definite and specific order of the court requiring it to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Securities and Exchange Commission v. First Financial Group of Texas, Inc.*, 659 F.2d 660, 669 (5th Cir. 1981).  "Application of sanctions is entrusted to the discretion of the trial judge, and overleniencey is to be avoided where it results in inadequate protection of discovery."  *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1126 (5th Cir. 1970).  This Court reviews the imposition of sanctions for an abuse of discretion. *Fleming & Assocs v. Newby & Tittle*, 529 F.3d 631, 641 (5th Cir. 2008).  However, the underlying factual findings, set out in the Memorandum and Order, should only be set aside if they are "clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility."  FED. R. CIV. P. 52(a)(6);  *See also Travelhost*, 68 F.3d at 961 (citing Rule 52(a) as standard for reviewing facts), *citing Federal Deposit Ins. Corp. v. LeGrand*, 43 F.3d 163, 166 (5th

17

Cir. 1995).  "An abuse of discretion only occurs where no reasonable person could take the view adopted by the trial court."  *Fleming & Assocs.,*529 F.3d at 641.

Again, there is really no dispute of the fact that Blitz failed to produce the documents introduced by Appellee, or of the District Court's finding Blitz violated the discovery order by that failure (i.e. if the documents had been located, they should have been produced).  Rather, the only real issue is whether Blitz's efforts to locate those documents was **unreasonable**.  Appellee will not engage to reiterate her restatement of facts at length.  Blitz undertakes to address each document and offer an excuse for why it was not located by reasonable methods.  Appellee has clearly and convincingly demonstrated that Blitz's lack of procedure for locating documents and failure to issue any kind of litigation hold or order virtually guaranteed that documents would be "missed" and destroyed.  Charlie Forbis' research is but one known example of the destruction of crucial information which was discarded.  Although Mr. Chrisco claims that he "spoke" to the employees who he thought might have relevant information, both designers Price and Forbis have testified that they were never approached with such requests.

As it did in the District Court, Blitz seeks defensively to run from failure to failure in an effort to put spin on the simple fact that in *Green*, Blitz produced the same boxes of documents it had been producing since 2002, with a few updates to

give the appearance of diligence.  They never reviewed Chrisco's initial efforts, and

they willfully hid documents until Blitz, as it admits in its briefing, "erroneously"

produced documents in a subsequent case, and opened its own Pandora's box.  Blitz

deliberately and willfully failed to disclose the "wish list" and other documents in

conscious disregard of Appellee's rights.  *See U.S. v. $ 49,000 Currency*, 330 F. 3d

371, 376 (5th Cir. 2003).

### THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION

Blitz argues broadly that the District Court lacked the authority to issue

sanctions after a settlement agreement in a case in which the Court had no continuing

jurisdiction.

This Court, however, has recognized that:

> "[A] district court always has jurisdiction to impose sanctions designed
> to enforce its own rules, even after that court no longer has jurisdiction
> over the substance of a case: 'It is well established that a federal court
> may consider collateral issues after an action is no longer pending.  For
> example, district courts may award costs after an action is dismissed for
> want of jurisdiction.'"

*Fleming & Assocs.,* 529 F.3d at 637, *citations omitted.*

19

Further, if the contempt order is compensatory or remedial in nature, it is not mooted by termination of the underlying action. *See Travelhost*, 68 F.3d at 962.

Blitz relies on *Fleming, Bradley v. American Household, Inc.*, 378 F.3d 373 (4th Cir. 2004), and *ESN, LLC v. CiscoSystems, Inc.*, 685 F. Supp. 2d 631 (E.D. Tex. 2009), for the broad proposition that "a court cannot issue sanctions that compensate a plaintiff who has already settled with the defendant". *E.g. Brief of Appellant at 32*. The first two cases are clearly distinguishable, as discussed more fully below. *ESN*, on the other hand, has nothing to do with settlement agreements, but instead stands for the proposition that a trial court may enter sanctions even when it decides that it never had jurisdiction of the merits of the case. *Id.*

In *Bradley*, the Court overturned a $300,000 sanctions award issued for discovery abuse and after a negotiated settlement. *Bradley*, 378 F.3d 373. The court first concluded that the award was criminal, not civil because (1) the fine was payable to the court, not the homeowners, and (2) the amount was not determined by any losses the homeowners suffered. *Id.* at 378. Appellant observes that the court also held that, even had the sanction been civil in nature, it would then be at odds with the negotiated settlement agreement. *Id.* at 381. Blitz fails to point out, however, that the settlement agreement in that case "by its terms specifically called for the district court to vacate its" sanctions orders. *Id.*

20

The court explained very clearly that its holding was limited to those facts:

> **"We need not speak broadly. We do not exclude the possibility that sanctions of some sort may be necessary in some cases to ensure the proper functioning of judicial process notwithstanding a negotiated settlement agreement."**

*Id.* at 380.

Similarly, Magistrate Judge Everingham and District Judge Ward both considered this Court's holding in *Fleming*, and found it distinguishable. In *Fleming*, the district court issued an order sanctioning plaintiffs' counsel, and ordering the defendants to submit a fee affidavit to determine the amount. *Fleming*, 529 F.3d 631, 639-40. Before the fees were calculated, the case was settled, and the defendant informed the court that the sanction order was part of the settlement. *Id.* Therefore, the real issue before this Court in *Fleming* was whether a party could bargain away its rights via a negotiated settlement. a question answered in the affirmative. *Id.* Judge Ward adopted by reference Judge Everingham's analysis of the *Fleming* and *Bradley* cases; Judge Everingham's Report and Recommendations contains an excellent discussion of these issues. USCA5 2789.

Clearly, Ms. Green did not go into the settlement negotiation with the knowledge of what Blitz had hidden. In this case, the settlement agreement did not contemplate a future sanctions order, and so cannot be used as a bar to Appellee's

recovery of Sanction "A".  The case of *Inst. for Motivational Living, Inc. V. Doulos Inst. For Strategic Consulting, Inc.*, 110 Fed. Appx. 283 (3rd Cir. 2004) directly addressed this issue.  In that case, the contemnor, Gosselin, deleted material from a computer which was subject to a discovery preservation order.  *Id.* at 285.  He deleted the materials on the morning of September 18, 2001, a few minutes before he signed the settlement agreement.  *Id.*  He then sought to avoid sanction by arguing that the settlement agreement released claims "whether known or unknown, of any nature whatsoever."  Thus, he argued that he did not violate the agreement (which was signed after the deletion) and could not face compensatory sanctions because the case was settled.  *Id.*  The court reviewed the agreement itself and found that "Settling Plaintiffs' Claims" did not include any claims for contempt or sanctions.  *Id.* at 288. In this case, Blitz could have negotiated a clear reference to sanctions.  It chose not to because it would have then been obvious to Ms. Green that she should negotiate that contingency as well.

The Third Circuit Court of Appeals did discuss the concept that, generally speaking, the settlement of a case forecloses the imposition of civil sanctions.  As discussed above, however, both the 4th Circuit and this Court have recognized that there need be no basis for continuing jurisdiction in order for a trial court to order remedial sanctions.

22

In *Clark v. International Union*, 752 F. Supp. 1291 (WD Virginia 1990), the court explained that the so called *Gompers* rule, often taken out of context from the Supreme Court's decision in *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 55 L. Ed. 797, 31 S. Ct. 492 (1911), does not stand for the proposition that civil sanctions cannot be ordered after settlement. *Gompers*, the *Clark* court explained, stands only for the proposition that "where a court imposes criminal sanctions followed by settlement of the underlying dispute, no remand for civil contempt proceedings may take place in connection with the case." *Clark*, 725 F. Supp. at 1300.

Blitz also attempts to persuade this Court by claiming that other courts which have considered its conduct in similar cases have "found insufficient evidence in the record to sanction Blitz." *Brief of Appellant at 26*. However, a careful reading of those holdings, or even of Blitz's summaries thereof, reveals no such thing. For example, in *Calder v. Blitz U.S.A.*, No. 2:07cv378 (D. Utah), the court declined a spoliation instruction; in *Thornton v. Blitz U.S.A.*, No. 5:09cv003 (S.D. Ga.) the court held the Plaintiff "unjustifiably assumes that there, in fact, was a flame arrestor design project." Clearly, the evidence and issues in those cases were different from this one. In the case at bar, there is no dispute that such a project existed. In any event, those cases and their issues while somewhat facially similar, dealt with different parties,

times, and issues which are not before this Court.

In a last-ditch effort, Blitz argues:

Accepting the District Court's view of the law will improperly allow a party to settle the case, sidestep Rule 60, and make claims even years after the settlement. As a practical matter, no settled case could ever be considered final.

*Brief of Appellant at 34.*

Restated appropriately, this argument would read, "A defendant who has willfully hidden documents and destroyed evidence might never escape the consequences thereof." This is exactly the reason this Court and others have reserved a broad holding in this area.

### BLITZ'S APPEAL OF THE $250,000 COMPENSATORY SANCTION IS MOOT

Finally, in consideration of Appellee's agreement not to oppose Blitz's Motion to Stay Enforcement of the Order below, Blitz paid or caused to be paid $250,000 into the trust fund of Ms. Green's attorneys to hold during the pendency of appeal. This payment obviates Blitz's ability to appeal of that portion of the order.

Specifically, Blitz's certificate of conference to its Motion to Stay regarding the payment reads: "… I conferred with Plaintiff's counsel, Todd Tracy, reaching an agreement that he is UNOPPOSED to Blitz's Motion to Stay should Blitz remit $250,000 for deposit in counsel's trust account to be held there pending appeal."

USCA5 3054.  This consideration purged Blitz of that portion of the order, even though Plaintiff cannot disburse the funds until the appeal is final.  This Court has repeatedly held that "[g]enerally, the discharge of a civil contempt order by the person held in contempt moots any appeal of the contempt judgment."  *In re Hunt*, 754 F.2d 1290, 1293 (5th Cir. 1985), *citations omitted*.  Blitz is foreclosed from challenging the order to pay Ms. Green $250,000 because it has complied therewith.

# IX.

## CONCLUSION

The District Court gave the parties ample opportunity to be heard in this matter, and delivered a thoughtful, well-reasoned opinion based on the evidence adduced. Blitz has been forced to admit that it failed to produce relevant documents. "We missed it" is only good if a reasonable effort has been made. Blitz simply ignored its obligations, and should now be held accountable. The sanction order itself is well within the trial court's discretion and just because Blitz disagrees, the findings are not clearly erroneous.

Although Blitz cleverly characterizes the District Court's sanction as a punitive, "scarlet letter" sanction, its purpose is obviously to ameliorate the harm that cannot be otherwise cured to future litigants. Far from shaming Blitz, the Order specifies that other courts are free to use the information or discard it; it is simply informative, not punitive. Further, the settlement agreement in this case was reached well before Blitz's skeletons emerged from the closet. Thus, the cases cited by Blitz are clearly distinguishable. Instead, this Court and others have purposefully left open the possibility for post-settlement compensatory sanctions for situations like this one. Blitz should not, with unclean hands, be able to escape the consequences of its choices.

Finally, although the issues surrounding the reporting sanctions remain in question, Blitz has purged itself of that portion of the order awarding compensatory sanctions by paying, though conditionally, the sums so ordered. Its efforts to now include that portion of the order are in vain.

For these reasons, Plaintiff-Appellee Rene Green respectfully requests that this Court AFFIRM the District Court's decision in all things.

Respectfully Submitted,

  /s/ Darren D. Grant
**DARREN GRANT** *Lead Attorney*
State Bar No. 24012723
**MATTHEW B. FLANERY**
State Bar No. 24012632
**GRANT & FLANERY, P.C.**
216 W. Erwin, Suite 200
Tyler, Texas 75702
(903) 596-8080 (Telephone)
(903) 596-8086 (Facsimile)
Darren@GFTexas.com

*Attorneys for Plaintiff-Appellee Rene Green*

Dated: August 30, 2011

# X.

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limitation,

Typeface Requirements, and Type Style Requirements

1.     This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because:

X     this brief contains 6,023 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii), *or*

☐     this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

X     this brief has been prepared in a proportionally spaced typeface using Corel WordPerfect X3 in Times New Roman 14 point font, *or*

☐     this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

/s/ Darren D. Grant
Darren D. Grant
*Attorney of Record for Rene Green*

a

## XI.

## CERTIFICATE OF SERVICE

I hereby certify that I personally electronically served a copy of the foregoing document, based upon written consent, on Adrienne L. Hernandez, Shook, Hardy, & Bacon L.L.P., 2555 Grand Blvd., Kansas City Missouri 64108, David E. Jones, Logan & Lowry, LLP, 102 E. 3rd Street, P.O. Box 452469, Grove, OK 74345-2469, and Michael Bridwell, Strong, Pipkin, Bissell, &Ledyard, L.L.P., 595 Orleans, Ste. 1400, Beaumont, Texas 77701 on this 30th day of August, 2011.


/s/ Darren D. Grant
Darren D. Grant
*Attorney of Record for Rene Green*